Oliver J. BURLAND, Plaintiff-Appellee,

v.

TRIPPE MANUFACTURING COMPANY, Defendant-Appellant.

No. 75–2111.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1976.
Decided Oct. 22, 1976.

Norman Lettvin, Chicago, Ill., for defendant-appellant.

Jerome F. Fallon, Chicago, Ill., for plaintiff-appellee.

Before CLARK, Associate Justice (Retired),* and PELL and TONE, Circuit Judges.

TONE, Circuit Judge.

The patent before us in this infringement suit covers a bar and appurtenant hardware to be used in mounting sirens and flashing lights on the tops of police cars and emergency vehicles. The District Court held the claims relied on valid and infringed. We hold them invalid for obviousness and therefore do not reach the issue of infringement.

### I

Only claims 3 and 4 of plaintiff's U.S. Patent No. 3,677,451 are in issue. The patent covers a bar with one or more pairs of T-shaped slots running along the top and bottom of its entire length. In claim 3 the bar has a hollow center usable as a channel for wiring. Claim 4 does not call for a

hollow bar. The slots accommodate T-shaped fittings, or nuts, which can be positioned anywhere along the length of the bar. The following drawings adapted from the patent show a cross section of the bar described in claim 3 and one of the T-shaped nuts, with labels we have added for convenient reference:

To the T-shaped nuts positioned on top of the bar, sirens or flashing lights can be bolted. To the T-shaped nuts positioned on the bottom, brackets are bolted, and these brackets are in turn attached to the vehicle. As shown by the drawings, the shoulders of each T-shaped nut are elongated, and the nut is inserted in the slot with the long axis of the shoulders parallel with the long axis of the slot, with the result that the sides of the slot restrain the nut from turning as a bolt is tightened into the nut.

At oral argument, plaintiff's counsel stated in response to questioning by the court that the essence of the invention consisted of (1) a cross wall (2) defining a T-shaped slot, which holds (3) a T-shaped nut with shoulders wider than the slot. These features are labeled in the above drawings.

### II

Both of the claims before us derive from claim 9 of the application, which described a vehicle mounting bar with T-shaped slots and fittings.[1] The patent examiner reject-

* The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States is sitting by designation.

1. More specifically, application claim 9 recited the following features, among others, in combination: (a) pairs of longitudinal and aligned slots in the top and bottom walls of the bar, (b) an H-shaped transverse cross section between

ed claim 9, together with certain other claims, with the following comments:

> "Obvious to use T-shaped slot . . . fitting [the T-shaped nut] . . . of [Sutherland Patent No. 1,633,295] in place of [Gosswiller Patent No. 3,281,030's] slot . . . & plate and bolt . . . used to mount bracket. Also obvious to mount lights etc., on top in a similar manner.

> "[Bjork U.S. Patent No. 2,480,353] shows support bar with top and bottom slidable supports . . . . [Gosswiller] renders obvious the use of a slot & complementary fitting . . . . T-shaped panel and fitting obvious from [Sutherland]. Also [Sutherland] shows pairs of slots."

Plaintiff responded by cancelling claim 9, together with all the other original claims, and adding new claims 11 through 14. Application claim 13 became claim 3 of the patent. It differs from cancelled claim 9 only in describing the slots as "spaced apart" and in specifying, in the following additional recital, that the bar is to be hollow:

> ". . . the bar being provided with a longitudinally extending central passage between the spaced-apart H-shaped connecting portions . . .."

Also derived from original claim 9 was amended claim 14, which was also found by the examiner to be obvious in light of Gosswiller, Bjork, and Sutherland, and which the applicant cancelled in favor of new claim 15. The latter became claim 4 of the patent. This claim does not call for either the H-shaped connecting portions or the hollow space, i.e., the "central-passage between the spaced-apart H-shaped connecting portions," that are called for in claim 3 of the patent.

The remarks accompanying the amendment which added claims 13 and 14 to the application state that those two amended claims "specify the T-shaped nature of the slots which is provided by the cross-wall or H-shaped connecting portions"; that the "slots extend for the full length of the bar to permit maximum versatility in mounting the bar on the vehicle and in mounting the objects to be carried by the bar and to permit the bar to be economically formed by extruding"; and that "[t]he cross wall also supports the T-fitting in the upper slot when it is not connected to a member mounted on the bar and provides a pick-up or stop for T-fitting in both the upper and lower slots when the bolts are being inserted." It is also stated that the wire tunnel between the slots (obviously referring only to application claim 13) is free of obstruction. These advantages, it is argued in the remarks, are not found in the references cited by the examiner dealing with vehicle mountings, and references from other fields relating to fastening devices were said to be inapplicable because they were in non-analogous arts.

In disallowing claim 14 on the ground of obviousness, the examiner stated as follows:

> "Gosswiller shows a vehicle roof carrier with . . . brackets . . . slidably adjustable in the channel support . . . . Bjork teaches and renders obvious the adjustment of the upper article carrying supports . . . as well as the separately adjustable bottom bracket support . . . with said supports being in vertical alignment, one directly above the other."

Also, it was obvious to substitute for the threaded supports of Bjork "other well known and conventional supports such as the 'T' shaped sliding 'nut' of Sutherland et al." Finally, said the examiner,

> "It is to be noted that, contrary to applicant's remarks, one wishing to improve the mounting for a fixture while also requiring that the mounting be slidingly adjustable could choose to use conventional 'T' shaped nuts and thus Suth-

each pair of slots providing each slot with a general T-shape, (c) T-fitting slidably received in each slot with a pair of shoulders extending transversely of the slot and engaging the inner

surface of the slot's wall, and (d) the bar being in combination with brackets and clamping means for mounting the bar on the vehicle.

erland et al. teaches the use of a well-known and conventional item."

The applicant then cancelled application claim 14, replacing it with application claim 15, which became claim 4 of the patent. The following words, which had appeared in substance in the remarks supporting disallowed claim 14 but not in that claim itself, were added by the new claim:

> ". . . the cross wall supporting the fitting at the top wall when the fitting is not engaged by the bolt in the warning device . . .."

Several other inconsequential additions were made.[2] The remarks accompanying the amendment argue that it is advantageous to have the slots running the entire length of the bar (even though disallowed claim 14 had specified this feature) and a cross wall to support loose fittings in the upper slot and to provide a back-up when bolts are inserted into the fittings in the lower slot. Gosswiller was distinguished as not showing a slot running the entire length of the bar and as not showing a cross wall. Bjork was distinguished as not showing a cross wall. The patent examiner thereupon allowed this claim, and, as stated above, it became claim 4 of the patent.

The file wrapper shows, in short, that the disallowed claims included the structure which plaintiff's counsel states is the essence of the patent, viz., a cross wall defining a T-shaped slot, which holds a T-shaped nut with shoulders wider than the slot. The claims were allowed only after amendment, in the case of claim 3, to recite that the bar is hollow, and, in the case of claim 4, to recite that the cross wall supports the fitting when it is not in use.

## III

The District Court held, and plaintiff argues here, that it was not obvious to combine T-fittings and T-slots defined by cross walls and extending the entire length of the bar, with prior art relating to mounting bars on vehicles. This assumes that plaintiff can claim as part of his inventive idea the combination of T-slots and T-fittings with prior mounting-bar art. We think this assumption conflicts with *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and that only the addition of cross walls and longer slots to this basic combination can be properly considered in determining obviousness.

In *Graham,* the Supreme Court laid down the test for obviousness and said that in applying that test the "invention is construed not only in light of the claims but also with reference to the file wrapper or prosecutive history in the Patent Office," and that "[c]laims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent." 383 U.S. at 33, 86 S.Ct. at 702.

These principles were applied in the portion of the *Graham* opinion in which the consolidated cases of *Calmar, Inc. v. Cook Chemical Co.* and *Colgate-Palmolive Co. v. Cook Chemical Co.* were decided. The facts in these *Cook Chemical* cases were much like those before us. The original claims of the application had been rejected by the examiner, in part on the basis of prior art. After the first rejection, the applicant relied entirely on a single feature "as the exclusive patentable difference in his combination," and the examiner allowed the claims on that basis. 383 U.S. at 32, 86 S.Ct. at 701. Applying the principles stated above, the Court concluded:

> "Here, the patentee obtained his patent only by accepting the limitations imposed by the Examiner. The claims were care-

2. The new claim describes the slots as "generally vertically aligned," and drops the description of the fittings as T-shaped and that of the bolts and shoulders of the fitting as "bolt means" and "shoulder means." In addition, it separately describes how the warning devices and brackets are attached, rather than combining the descriptions, and specifically states that the purpose of the construction is to mount a warning device.

fully drafted to reflect these limitations and Cook Chemical is not now free to assert a broader view of [the] invention. The subject matter as a whole reduces, then, to the distinguishing features clearly incorporated into the claims." 383 U.S. at 34, 86 S.Ct. at 702.

 In the instant case, the examiner found obvious the combination of T-slots and T-fittings with prior art relating to vehicle support bars. The plaintiff responded by submitting amended claims containing additional features, in what became claim 3, the hollow tunnel, and, in what became claim 4, first the longitudinal extension of the slots and the cross wall, and, when the examiner held these insufficient, the use of the cross wall to support unconnected fittings. The remarks accompanying the claims argue that these are patentable improvements over the prior art. There is nothing to indicate that the examiner ever retreated from the position that the basic conception was unpatentable.[3] Under these circumstances, we think "[t]he subject matter as a whole reduces . . . to the distinguishing features clearly incorporated into the claims." 383 U.S. at 34, 86 S.Ct. at 702.

 We have no hesitation in holding these distinguishing features obvious. Plaintiff's counsel himself does not include them in the essence of the invention. A combination of old elements, none of which performs a different function or operation than it did previously, is not patentable even though the result may be "more striking . . . than in previous combina-

tions." *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784, 791 (1976); *Pederson v. Stewart-Warner Corp.*, 536 F.2d 1179 (7th Cir. 1976). Given a vehicle support bar with slots and T-fittings, nothing could be more obvious or less striking than to provide a hollow space inside the bar (which of course could be used as a channel for wiring), or a cross wall to keep loose fittings from falling into the hollow space inside the bar;[4] or, as the examiner recognized in rejecting the first amended version of present claim 4, to extend the slots for the length of the bar to give greater flexibility in placing the siren and lights and facilitate production of the bar by extrusion.

Our holding in this case puts us in conflict with a holding by the Fifth Circuit in a case which was not cited by the parties. *Ingersoll-Rand Co. v. Brunner & Lay, Inc.*, 474 F.2d 491, *cert. denied*, 414 U.S. 865, 94 S.Ct. 125, 38 L.Ed.2d 117 (1973). In that case, the court held that "a patentee who is estopped from attempting to enlarge the scope of his monopoly by asserting infringement by a competitor's product which is only covered by the rejected patent claim, is not precluded from contending that the patent claim before amendment was erroneously rejected by the patent office *for the purpose of showing that his patent as issued is non-obvious.*" 474 F.2d at 498 (emphasis in original). While the court quoted the general language in *Graham* about construing the claims in light of the file wrapper, it neither referred to nor followed the Supreme Court's decision in the portion of the opinion holding the Cook Chemical claims

3. In *Graham* the patentee's attorney had acknowledged, in a letter with which the final claims were submitted, that he and the examiner had reached an agreement "relative to limitations which must be in the claims in order to define novelty" over the prior art. 383 U.S. at 32–33, 86 S.Ct. 684. In the case at bar the position of the examiner must be inferred from his stated reasons for disallowing the earlier claims and his allowance of amended claims which contained distinguishing features. Whether persistence in disallowance based on prior art is shown by express recital or fair inference can hardly be controlling. The principle on which the *Graham* opinion held the

Cook Chemical claims invalid applies in either case.

4. Plaintiff now contends that the cross wall has advantages relating to the distribution of stresses in the bar. "No such function . . . is hinted at in the specifications of the patent. If this were so vital an element in the functioning of the apparatus it is strange that all mention of it was omitted." *Graham v. John Deere Co., supra*, 383 U.S. at 25, 86 S.Ct. 684; quoting *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 550, 58 S.Ct. 662, 82 L.Ed. 1008 (1938).

invalid. We believe the dichotomy adopted in *Ingersoll-Rand* between the scope given the claim when obviousness is the issue and the scope given it when infringement is the issue is inconsistent with *Graham*. We therefore respectfully decline to follow *Ingersoll-Rand*.[5]

### IV

Finally, we would hold the claims invalid for obviousness even if we ignored the file wrapper. We agree with the patent examiner that it was obvious to apply a conventional fastening system, such as the use of T-slots and nuts, to mounting support bars on vehicles and mounting emergency signaling devices on the bars. *Cf. Graham v. John Deere Co., supra,* 383 U.S. at 35, 86 S.Ct. 684, 15 L.Ed.2d 545; *Pederson v. Stewart-Warner Corp., supra,* 536 F.2d at 1182–1183. Given this basic combination, it was, as we have already held, also obvious to make the additions recited in the amendments to the application. The Patent Office would have done better to have remained firm in its disallowance of the patent; the patent laws are intended to reward invention, not persistence in filing papers at the Patent Office.

REVERSED.

---

**5.** This opinion has been circulated among all judges of this court in regular active service in view of the conflict between our holding and that of the Fifth Circuit. No judge favored a rehearing in banc.