The **RITTLING CORPORATION,**
Plaintiff,

v.

**SLANT/FIN CORPORATION,** Defendant.

No. 62 C 49.

United States District Court
E. D. New York.

Dec. 29, 1965.

428

Gerald E. Bodell, New York City (William R. Epes, Constantine N. Katsoris, New York City, and Epes & Walsh, of counsel), for plaintiff.

Albert M. Parker, New York City (Alfred W. Vibber and John P. Chandler, New York City, of counsel), for defendant.

DOOLING, District Judge.

Plaintiff's patent (Carter, U. S. Patent No. 2,733,049) is, primarily, addressed to a casing assembly for finned tube baseboard heat exchangers of the kind used for domestic space heating. Defendant's casing assembly differs from plaintiff's only modestly in details of construction and arrangement, and it has been concluded that it infringes four claims of the plaintiff's patent. Cf. Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 41–43, 50 S.Ct. 9, 74 L.Ed. 147; Ekco Products Co. v. Chicago Metallic Mfg. Co., 7th Cir. 1963, 321 F.2d 550, 554–555; American Technical Machine Corp. v. Caparotta, 2d Cir. 1964, 339 F.2d 557, 559–560. On the more difficult issue of validity it has been concluded that although plaintiff's invention was not identically disclosed or described in any earlier patent, printed publication or article, it failed to meet the standard of patentability of 35 U.S.C. § 103, that is, the differences between the subject matter that

plaintiff sought to have patented and the prior art were such that the subject matter as a whole would have been obvious to a person having ordinary skill in the space heating art. The findings of fact have been separately made and the facts will not be repeated.

Hazeltine Research, Inc. v. Brenner, 1965, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304, makes it clear that copending applications form a part of the "prior art" to which 35 U.S.C. § 103 refers and are not available references against the application only under 35 U.S.C. § 102(e) and then only if they identically disclose or describe the invention. Plaintiff must, therefore, deal not only with the Webster baseboard heater, which was plainly described in printed publications over a month before the complete conception of plaintiff's assembly was evolved, but also with Trane, U. S. Patent No. 2,662,747 and Wilcox, U. S. Patent No. 2,656,156 and Gundrum, U. S. Patent No. 2,651,504. Unobvious novelty in plaintiff's assembly as a whole is impossible of showing against the background of the baseboard heater art.

Plaintiff's invention hinges on a particular mode of positioning a dual purpose bracket in a casing. The prior art knew the casing, and it knew the bracket and the bracket's dual function of supporting both a finned tube heat exchanger and a snap-on front cover. The prior art, however, had generally positioned the bracket in the casing and then had driven nails or wood-screws through both the bracket and casing into the wall. But Webster preceded plaintiff in the critical area of plaintiff's conception: Webster secured only the casing to the wall and mounted the bracket within the casing; Webster discarded use of the bracket as the support member for the casing; Webster's bracket is not fastened into the wall; the bracket is engaged in guide tracks formed in the casing and may be located anywhere along it.

The plaintiff's alternative—for it is that—was then obvious. Positioning in

the known casing a known dual function bracket that would not support but would —like Webster's bracket—ride in the casing posed only a choice-making that evoked an obvious choice among the mechanical expedients that obtruded themselves once the goal was seen, and Webster had depicted the goal. Webster chose guide channels (as Carter may have done at first) ; Carter chose a friction positioning that has utility and economy to recommend it but remains an obvious choice among known modes of positioning comparable devices. Novelty cannot—and, perhaps, need not—be shown for the chosen mode, but its choice must be unobvious in the context of the plaintiff's adoption of it to be, as here it is claimed to be, the very linchpin of the claimed patentability of the assembly.

Ellis, U. S. Patent No. 2,460,625, does not anticipate the claims of plaintiff's patent, but it depicts and describes plaintiff's frictional means of positioning a bracing member in a baseboard heater. The examiner, in initially rejecting the claims now in suit as unpatentable, relied on Gundrum, et al., U. S. Patent No. 2,-651,504 for casing and bracket similarities and on Ellis as teaching the manner of supporting the bracket; the examiner was apparently satisfied with the applicant's answer that Ellis was not a bracket supporting a heater or a cover but was a bowed spring used simply to exert a lateral thrust at a flat panel to keep it upright; in any case the examiner then allowed the claims as filed. Much force would attach to that action of the patent office were it not that the examiner accepted differentiation of use and structure for a demonstration of unobviousness over Ellis in mode of positioning—the point for which he had cited Ellis. The examiner's point was sound: Ellis, it is most true, did not anticipate Carter's bracket; Ellis did demonstrate that Carter's mode of frictionally positioning his bracket in a casing had been used in the baseboard heater art for positioning another sort of supporting member.

Apart from the citation of Ellis, the frictional positioning of plaintiff's bracket is a mode that would be obvious to one skilled in the baseboard heater field. Defendant's expert could not demonstrate that to the exclusion of counterattack by citing from unanalogous fields such patents as Fish, No. 926,181 and Bock, No. 1,739,057 and Fischer, No. 2,-223,680 but his general insistence that plaintiff's invention would have been obvious to a person of ordinary skill in the art echoes the layman's unsurprized observation of plaintiff's change in positioning means.

In the circumstances of the present case, the diligence of plaintiff's inventor Carter in reducing his invention to practice and in applying for a patent is not material. Carter was, on the evidence, prior to the Vulcan development and no diligence on Vulcan's part was shown as against Carter. On the other hand Carter did not develop his complete conception until after the Webster article had become a printed publication. It was then too late for Carter's diligence to have any effect because Webster was, if not constructively reduced to practice by the printed publication, in any case prior art on the point of Carter's claimed patentability and there was no contest over priority for patentability of the same invention as between Carter and Webster. As indicated above, it would not seem that the claims of Carter could be made on the basis of Webster's article.

Judgment must be for defendant on the ground that the claims in suit are invalid.